**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| TITLEMAX OF SOUTH CAROLINA, INC., | Civil Action No.   4:26-cv-01942-CMC |
| Plaintiff, | |
| vs. | |
| VANESSA JACKSON, | |
| Defendant. | |

**PLAINTIFF TITLEMAX OF SOUTH CAROLINA, INC.'S
ORIGINAL COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD**

Plaintiff TitleMax of Virginia, Inc. ("Plaintiff") respectfully moves under Section 10(a)(1) of the Federal Arbitration Act, 9 U.S.C. § 10(a)(1) ("FAA"), to seek an order from this Court vacating the final arbitration award attached hereto as **Exhibit A** ("Award") in this matter in its entirety based on fraud.

In addition, Plaintiff moves under 9 U.S.C. § 10(a)(4) for vacatur of the Award in its entirety or, at a minimum, to strike the award of punitive damages, on the grounds that the arbitrator failed to honor the parties' agreed-upon choice-of-law provision, held that the CFA warrants a private right of action when it does not, and issued a constitutionally improper punitive damages award.[1] In support of these requests, Plaintiff states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff TitleMax of South Carolina, Inc. is a South Carolina corporation with its principal place of business in Texas at 2312 East Trinity Mills Road, Carrollton, TX 75006.

---

[1] At the appropriate time, TitleMax of South Carolina, Inc. will file a formal motion to vacate the Award and supporting memorandum setting forth in detail the legal basis for such vacatur.

2.      Defendant Vanessa Jackson ("Defendant") has asserted that she is or was a citizen of North Carolina.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00. Specifically, in the Award, the Arbitrator awarded Defendant damages, attorneys' fees and costs, and interest totaling over $75,000.00.

4.      Venue is proper in South Carolina under 28 U.S.C. § 1391(b)(2). While the evidentiary hearing was conducted virtually and there is no single physical location in which the arbitration took place or wherein the award was made, the acts giving rise to the relationships and agreements between the parties and all claims at issue took place in South Carolina. *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 203-04 (2000) (holding that venue is proper either under the permissive venue provisions in 9 U.S.C. § 9–10 or under the general venue provisions in 28 U.S.C. § 1391).

5.      This Court has personal jurisdiction over Defendant Jackson in that the actions of Jackson giving rise to the Loan Agreements at issue all occurred in South Carolina. More specifically, and among other things, Jackson voluntarily traveled to TitleMax of South Carolina, Inc.'s store in Dillon, South Carolina for the purpose of negotiating, applying for, and entering into the Loan Agreements with TitleMax of South Carolina, Inc.

## RELEVANT FACTS

6.      TitleMax of South Carolina, Inc. is a lender that is authorized to offer loans in South Carolina. TitleMax of South Carolina, Inc. offers installment loan products out of its brick-and-mortar stores located in South Carolina.

7.     Defendant is a North Carolina resident who voluntarily traveled to South Carolina to obtain title loans from TitleMax of South Carolina, Inc. in its brick-and-mortar stores in South Carolina. While in South Carolina, Defendant entered into two loan agreements (the "Loan Agreements") with TitleMax of South Carolina, Inc. on August 23, 2021 and August 24, 2021. After accepting its provisions and executing this Loan Agreement, Defendant received the loan proceeds while physically present in TitleMax of South Carolina, Inc.'s brick-and-mortar store in South Carolina.

8.     In addition to requiring arbitration of any disputes, each Loan Agreement includes a choice-of-law provision. The choice-of-law provision in both of the Loan Agreement states: "**Governing Law:** . . . South Carolina law governs this Note, but the Federal Arbitration Act governs the Waiver of Jury Trial and Arbitration Clause in Section 24" (emphasis in original).

9.     On June 9, 2023, Defendant and other North Carolina residents filed a lawsuit against TitleMax of South Carolina, Inc. in the Superior Court of Guilford County, North Carolina. The case was removed to the United States District Court for the Middle District of North Carolina. In their motion to compel arbitrations and stay proceedings, the plaintiffs in that action, including Defendant, did not challenge the enforceability of the choice-of-law or arbitration provisions. *Moreno v. TitleMax of Virginia, Inc. et al*, Case No. 1:23-cv-00589-LAF-JEP, Dkt. No. 18 (M.D.N.C. Aug. 16, 2024).

10.     On September 18, 2024, the Middle District of North Carolina ordered TitleMax of South Carolina, Inc. to arbitrate Defendant's claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, in accordance with the Loan Agreements. *See* Dkt. No. 78 at 8.

11.     During the arbitration, Defendant argued that—notwithstanding the choice-of-law provision to which she agreed—the arbitrator should apply North Carolina law instead. Defendant

3

then argued that the interest terms found in the Loan Agreements violated: (1) the North Carolina Consumer Finance Act ("CFA") (N.C. Gen Stat. § 53-165 *et seq.*); and (2) the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") (N.C. Gen. Stat. § 75-1.1). Defendant also sought punitive damages.

12.     TitleMax of South Carolina, Inc. responded, *inter alia*, that the choice-of-law provisions in the Loan Agreements to which Defendant expressly agreed required the arbitrator to apply South Carolina law and that Defendant could not state a claim (nor did Defendant try to state such a claim) under South Carolina law. TitleMax of South Carolina, Inc. also contended that, in any event, Defendant's claims failed because she had not demonstrated that she exhausted pre-suit remedies available to her under the parties' Fifth Loan Agreement, which were mandatory according to Section 11 of that binding contract.

13.     Ultimately, the arbitrator issued an interim award on July 7, 2025, *see* Ex. B, and the Award incorporating the interim award on October 25, 2025.[2] *See* Ex. A. Refusing to enforce the Loan Agreements' choice-of-law provisions, the arbitrator found that the interest rates agreed to in the Loan Agreements violated North Carolina law and awarded Defendant $12,795.32 in compensatory damages and $150,000 in punitive damages, plus pre- and post-judgment interest, as well as attorneys' fees and costs. *Id.*

14.     Several weeks later, another defect in this proceeding surfaced. On February 12, 2026, TitleMax of South Carolina, Inc. learned for the first time that material evidence submitted on behalf of Defendant—a declaration signed under penalty of perjury purporting to be from a former employee of TitleMax of Virginia, Inc. (the "Potential Forgery")—was not an authentic representation of that former employee's statements and bore a signature that did not match that

---

[2] The Award was not served on the parties until February 11, 2026.

of the former employee. Most importantly, the source of that information was the purported declarant himself, Darren Medley. Mr. Medley further advised TitleMax of South Carolina, Inc. that the statements contained in the Potential Forgery on which the Award relied were entirely untrue. As set forth in the true, sworn, and notarized affidavit of former employee Darren Medley dated February 13, 2026, Mr. Medley swore that he would ***never*** have sworn to the truth of the statements within the declaration submitted by counsel for Defendant in the arbitration.

15.     TitleMax of South Carolina, Inc. subsequently retained a leading handwriting expert in the field of forensic document examination: M. Patricia Fisher of Fisher Forensic Document Laboratory, Inc. As a widely published, leading expert in the field with a specialty in fabricated and altered documents, Ms. Fisher opined in an expert witness report filed in *Goines v. TitleMax of Va., Inc.*,[3] attached hereto for the Court's reference, that "the evidence provides very strong support that someone other than Mr. Medley signed" the 2020 Medley Declaration and that basic handwriting analysis principles lead to the obvious conclusion that that "the questioned and known [Medley] signatures are signed by different persons."

16.     At every critical step of the arbitration, Defendant relied in substantial part on the Potential Forgery. Defendant's counsel submitted the Potential Forgery, holding it out as "testimony" of a witness for Defendant. Specifically, at the dispositive briefing stage, Defendant filed a dispositive motion that relied on and referenced the Potential Forgery as "Exhibit E." Defendant relied upon the Potential Forgery as purported support for "the undisputed facts that TitleMax's own employees concede in discovery." *Id.* According to Defendant, the Potential Forgery bolstered the argument that "[TitleMax of South Carolina, Inc.] and its affiliates regularly

---

[3] *Goines v. TitleMax of Va., Inc.*, Case No. 19-cv-00489, Dkt. No. 657-1 (M.D.N.C. Mar. 31, 2026).

solicit, discuss, make loan offers and receive acceptances of those offers from North Carolina residents." *Id.* at 12. Defendant also filed a response in opposition to TitleMax of South Carolina, Inc.'s dispositive motion during the arbitration. Again relying on the Potential Forgery as evidentiary support, Defendant argued:

> Under the Court's rulings in *Wall* and *Troublefield*, that means TitleMax violated the NCCFA because such was both "negotiation" and "discussion" which occur— in part—in North Carolina. And the only submitted testimony from employees that actually worked during this time and were actually in the stores say via submitted sworn testimony that the discussions, solicitation, and marketing went much further than even TitleMax now admits. (Pack Depo (attached to Motion as Exhibit D); Affidavit of Jessica Crowley and *Affidavit of Darren Medley*.

17. In issuing the interim award, the arbitrator adopted Defendant's positions that were premised on the Potential Forgery and rendered an Award aligning with Defendant's arguments. Specifically, the arbitrator stated that "[t]he uncontroverted testimony from former TitleMax employees establishes by clear and convincing evidence that TitleMax routinely provided loans to North Carolina residents, including Claimant, and recorded liens on borrower's vehicles with the NC-DMV." Ex. A at 31.

## COUNT ONE: VACATUR OF AWARD UNDER 9 U.S.C. § 10(a)(1)
### (AWARD PROCURED BY FRAUD)

18. TitleMax of South Carolina, Inc. incorporates the allegations set forth above as if fully set forth herein.

19. The Federal Arbitration Act empowers this Court to vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). The movant seeking to vacate the award under this section must show "that the fraud or corruption was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010) (quoting *A.G.*

*Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir. 1992)) (alterations omitted); *see also France v. Bernstein*, 43 F.4th 367, 378 (3d Cir. 2022) (collecting cases).

20. First, as set forth above, the fraud was not discoverable through due diligence before arbitration—the evidence did not come to light until February 12, 2026, which was after the Award was final in the underlying arbitration.

21. Second, as stated above, the arbitrator stated that "[t]he uncontroverted testimony from former TitleMax employees establishes by clear and convincing evidence that TitleMax routinely provided loans to North Carolina residents, including Claimant, and recorded liens on borrower's vehicles with the NC-DMV." Ex. A at 31. This statement indicates that the arbitrator appeared to have relied on the Potential Forgery in determining that punitive damages—a an issue in the arbitration—were appropriate.

22. Third, the fraud was established by clear and convincing evidence. Indeed, the Potential Forgery is rife with false statements about TitleMax of South Carolina, Inc.'s business practices upon which the arbitrator relied in issuing the Award, and Mr. Medley stated that several of the statements in the Potential Forgery were not true.

23. Thus, vacatur on the grounds of fraud is warranted under 9 U.S.C. § 10(a)(1)

### COUNT TWO: VACATUR OF AWARD UNDER 9 U.S.C. § 10(a)(4)
### (NO PRIVATE RIGHT OF ACTION UNDER THE CFA)

24. TitleMax of South Carolina, Inc. incorporates the allegations set forth above as if fully set forth herein.

25. Based on the CFA's express and unambiguous language, enforcement of violations occurs exclusively through public enforcement by the State and the Commissioner of Banks, who may pursue the primary criminal penalty of a Class 1 misdemeanor, N.C. Gen. Stat. § 53-166(c),

as well as the additional restitutive penalty of full disgorgement of all principal and interest received, N.C. Gen. Stat. § 53-166(d).

26.    In addition, the North Carolina Constitution assigns exclusive authority to prosecute all criminal offenses to the district attorney—not to private litigants. N.C. Const. art. IV, § 18.

27.    Absent a private right of action under the CFA, Defendant lacks standing to assert a CFA claim and therefore cannot seek any relief under that statute, whether in the form of criminal penalties or additional restitutive penalties.

28.    Defendant also failed to cite any North Carolina case holding that a private right of action exists under the CFA. Nevertheless, the arbitrator accepted Defendant's unsupported position and allowed her claims to proceed.

29.    By disregarding the clear and unambiguous statutory mandate and well-established case law, the arbitrator exceeded her authority and manifestly disregarded the law, warranting vacatur under 9 U.S.C. § 10(a)(4) and controlling precedent.

## COUNT THREE: VACATUR OF AWARD UNDER 9 U.S.C. § 10(a)(4)
### (FAILURE TO ENFORCE THE CHOICE-OF-LAW PROVISIONS)

30.    TitleMax of South Carolina, Inc. incorporates the allegations set forth above as if fully set forth herein.

31.    The parties mutually agreed that South Carolina law would govern Defendant's five Loan Agreements, and the Loan Agreements include unambiguous choice-of-law provisions reflecting those decisions.

32.    Nonetheless, the arbitrator disregarded the parties' clear contractual agreement and applied North Carolina law, effectively modifying the Loan Agreements.

33.     By disregarding the parties' mutually agreed-upon choice-of-law provisions, the arbitrator exceeded her authority, manifestly disregarded the law, and issued an Award that fails to draw its essence from the agreements, requiring vacatur of the Award under 9 U.S.C. § 10(a)(4) and binding case law.

**COUNT FOUR: VACATUR OF PUNITIVE DAMAGES AWARD**
**(UNDER 9 U.S.C. § 10(a)(4))**

34.     TitleMax of South Carolina, Inc. incorporates the allegations set forth above as if fully set forth herein.

35.     The arbitrator awarded Defendant $150,000 in punitive damages.

36.     By awarding Defendant punitive damages, the arbitrator manifestly disregarded clearly defined principles of law prohibiting the imposition of punitive damages in the absence of fraud, malice, or willful or wanton conduct.

37.     Moreover, the punitive damages award is grossly excessive, arbitrary, and violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

38.     Accordingly, by imposing the punitive damages award, the arbitrator exceeded her authority and manifestly disregarded the law, justifying vacatur under 9 U.S.C. § 10(a)(4) and binding case law.

**PRAYER FOR RELIEF**

WHEREFORE, TitleMax of South Carolina, Inc. respectfully requests that, pursuant to 9 U.S.C. § 10(a)(2), 9 U.S.C. § 10(a)(3), and 9 U.S.C. § 10(a)(4), the Court enter an order vacating the Award in its entirety, or, in the alternative, an order vacating the award of punitive damages.

[*Signature Page Follows*]

Respectfully submitted,

s/ Celeste T. Jones
Celeste T. Jones (Fed. ID No. 2225)
**BURR & FORMAN LLP**
1221 Main Street, Suite 1800
Columbia, SC 29201
(803) 753-3255
ctjones@burr.com

Ryan J. Strasser (*pro hac vice* forthcoming)
Erin M. Harrigan (*pro hac vice* forthcoming)
**TROUTMAN PEPPER LOCKE LLP**
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1478
(804) 697-1465
ryan.strasser@troutman.com
erin.harrigan@troutman.com

*Counsel for Plaintiff TitleMax of South Carolina, Inc.*

May 13, 2026
Columbia, South Carolina

10